STATE OF LOUISIANA
v.
EMMANUEL JOSEPH LOWE
No. 2008 KA 0816.
Court of Appeal of Louisiana, First Circuit.
October 31, 2008.
NOT DESIGNATED FOR PUBLICATION
DOUG MOREAU, District Attorney, RONALD C. GATHE, Jr., Assistant District Attorney, Counsel for Appellee State of Louisiana.
KATHERINE M. FRANKS, Counsel for Appellant, Emmanuel Joseph Lowe.
Before CARTER, C.J., WHIPPLE and DOWNING, JJ.
DOWNING, J.
The defendant, Emmanuel Joseph Lowe, was charged by bill of information with battery of a correctional facility employee, a violation of La. R.S. 14:34.5. The defendant pled not guilty. Following a jury trial, he was found guilty as charged. He was sentenced to one year imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. The defendant filed a motion for post-verdict judgment of acquittal, which was denied. The defendant now appeals, designating three assignments of error. We affirm the conviction and sentence.

FACTS
On October 28, 2006, Deputy Garrett Owens was employed as a correctional officer for the East Baton Rouge Parish Prison, where the defendant was being housed as an inmate. That evening, Deputy Owens was conducting "pill call," wherein an inmate in need of medication is allowed to exit his cell to receive medication from a nurse and then is required to return directly back to his cell. The defendant obtained his medicine from the nurse, but instead of returning to his cell, he continued to walk past it. Deputy Owens instructed the defendant a few times to return to his cell, but the defendant kept walking. Deputy Owens entered the defendant's cell to check for contraband. The defendant then returned and stood in front of his cell. Deputy Owens again instructed the defendant to go into his cell, but the defendant refused. Deputy Owens placed the defendant in an escort position, and as he walked the defendant into his cell, the defendant turned toward Deputy Owens and struck him on top of the forehead with a closed fist. Deputy Owens struck the defendant with an open hand. Another officer called for backup. By the time another deputy arrived to provide assistance, Deputy Owens had managed to place the defendant back in his cell without further incident. Deputy Owens did not suffer any medical injuries.

ASSIGNMENT OF ERROR NO. I
In his first assignment of error, the defendant argues the evidence was insufficient to support the conviction of battery of a correctional facility employee. Specifically, the defendant contends that the State did not prove he had the requisite criminal intent to commit the battery or that the battery was not committed in self-defense.
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also La. Code Crim. P. art. 821(B); State v. Ordodi, 06-0207, p. 10 (La. 11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 01-2585, pp. 4-5 (La. App. 1 Cir. 6/21/02), 822 So.2d 141, 144. The testimony of the victim alone is sufficient to prove the elements of the offense. State v. Orgeron, 512 So.2d 467, 469 (La. App. 1 Cir. 1987).
Louisiana Revised Statutes 14:33 defines battery to include the intentional use of force or violence upon the person of another. Louisiana Revised Statutes 14:34.5 provides in pertinent part:
(A)(1) Battery of a correctional facility employee is a battery committed without the consent of the victim when the offender has reasonable grounds to believe the victim is a correctional facility employee acting in the performance of his duty.
(2) For purposes of this Section, "correctional facility employee" means any employee of any jail, prison, correctional facility, juvenile institution, temporary holding center, halfway house, or detention facility.
Battery of a correctional facility employee is a general intent, rather than specific intent, crime. The offense requires neither the infliction of serious bodily harm nor the intent to inflict serious injury. Criminal intent may be specific or general. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La. R.S. 14:10(1). Proof of specific intent is required where the statutory definition of a crime includes the intent to produce or accomplish some prescribed consequence. The statutory definition of battery of a correctional facility employee does not include the intent to produce or accomplish some prescribed consequence.
General intent requires a showing that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act. La. R.S. 14:10(2). In general intent crimes, criminal intent necessary to sustain a conviction is shown by the very doing of the acts which have been declared criminal. The criminal intent necessary to sustain a conviction for battery of a correctional facility employee is shown by the very doing of the acts which have been declared criminal in the definition of the crime. State v. Elliot, 00-2637, pp. 4-5 (La. App. 1 Cir. 6/22/01), 809 So.2d 203, 205-06.
Louisiana Revised Statutes 14:19(A) provides:
The use of force or violence upon the person of another is justifiable when committed for the purpose of preventing a forcible offense against the person or a forcible offense or trespass against property in a person's lawful possession, provided that the force or violence used must be reasonable and apparently necessary to prevent such offense, and that this Section shall not apply where the force or violence results in a homicide.
Louisiana Revised Statutes 14:21 provides:
A person who is the aggressor or who brings on a difficulty cannot claim the right of self-defense unless he withdraws from the conflict in good faith and in such a manner that his adversary knows or should know that he desires to withdraw and discontinue the conflict.
In the non-homicide situation, a claim of self-defense requires a dual inquiry: first, an objective inquiry into whether the force used was reasonable under the circumstances, and, second, a subjective inquiry into whether the force used was apparently necessary. State v. Pizzalato, 93-1415, p. 3 (La. App. 1 Cir. 10/7/94), 644 So.2d 712, 714.
In a homicide case, the State must prove, beyond a reasonable doubt, that the homicide was not perpetrated in self-defense. State v. Spears, 504 So.2d 974, 978 (La. App. 1 Cir. 1987). However, Louisiana law is unclear as to who has the burden of proving self-defense in a non-homicide case, and what the burden is.[1] State v. Barnes, 590 So.2d 1298, 1300 (La. App. I Cir. 1991). In previous cases dealing with this issue, this Court has analyzed the evidence under both standards of review, that is whether the defendant proved self-defense by a preponderance of the evidence or whether the State proved beyond a reasonable doubt that the defendant did not act in self-defense. See Pizzalato, 93-1415 at p. 4, 644 So.2d at 714.
The defendant contends that the State, rather than establishing beyond a reasonable doubt that he had the intent to commit a battery on Deputy Owens, established only that the he sought to resist the force used against him. Further, according to the defendant, the State failed to establish that Deputy Owens's use of force was either sanctioned or reasonable under the circumstances. The defendant maintains that his response to being grabbed and shoved into his cell was no more than required to obtain his release from the restraint. (Defendant's brief, pp. 9-10).
Deputy Owens testified at trial that, after repeatedly instructing the defendant to return to his cell, he placed his hand on the defendant's shoulder to escort him into his cell. The defendant then turned toward Deputy Owens and struck him in the forehead with a closed fist. Based on this testimony, the defendant, by the very doing of the act of striking Deputy Owens, clearly had the criminal intent necessary to sustain a conviction for battery of a correctional facility employee. Moreover, while this court, as discussed above, has analyzed self-defense claims under both standards of review, we need not and do not decide the issue of who has the burden of proving (or disproving) self defense because, under either standard, the evidence sufficiently established that the defendant did not act in self defense. See Pizzalato, 93-1415 at p. 4, 644 So.2d at 714. Deputy Owens's testimony established that, despite being repeatedly told to return to his cell, the defendant refused to comply. Based on his training and what he described in his testimony as "by the rule book," Deputy Owens placed one hand on the defendant's shoulder and his other hand on the defendant's hand, and escorted the defendant to his cell. Without warning, the defendant struck Deputy Owens. The record establishes that, in placing the defendant in an escort position, Deputy Owens's actions were reasonable and necessary to control a noncompliant inmate. The defendant's use of force was neither reasonable nor necessary to prevent Deputy Owens from discharging his duties as a correctional officer. See La. R.S. 14:19(A). Nothing in Deputy Owens's description of events indicates the defendant acted in self defense.
Joshua Lindley, a prisoner whose cell was three cells down from the defendant's cell, testified at trial that, after the defendant got his pills, the defendant walked down the hall to get another inmate some water. According to Lindley, Deputy Owens then went into the defendant's cell and threw the defendant's mattress into the hallway. Lindley testified that when the defendant returned near his cell to grab his mattress, Deputy Owens punched and choked the defendant. The defendant never hit Deputy Owens, according to Lindley. In its rebuttal, the State recalled Deputy John Jeanpierre, a witness previously called by the defendant at trial. Deputy Jeanpierre was the cage deputy on the wing where both the defendant and Lindley were being held. Deputy Jeanpierre testified that he did not see any mattress thrown out of a cell into the main area. He further testified that, despite there being mirrors on walls opposite the cells, an inmate inside his cell could not see what was happening inside a cell three rows away.
The jury heard testimony from witnesses with conflicting accounts. The guilty verdict indicates the jury accepted the account of the incident set forth by the State's witnesses. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Taylor, 97-2261, pp. 5-6 (La. App. I Cir. 9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342, p. 8 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La. App. 1 Cir. 1985).
After a thorough review of the record, we find that the evidence supports the jury's verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant, in striking Deputy Owens in the head, did not act in self-defense and, as such, was guilty of battery of a correctional facility employee.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 2 AND 3
In his second assignment of error, the defendant asserts the trial court erred in not giving him credit for time served and in suspending the execution of his sentence until after he was convicted of the offense he was being detained for at the time of the battery on Deputy Owens.[2] In his third assignment of error, the defendant asserts the trial court erred when it altered his sentence without his or his counsel's presence.
We note at the outset that the trial court did not suspend the execution of the defendant's sentence. At sentencing, the trial court sentenced the defendant to one year at hard labor without benefit of parole, probation, or suspension of sentence, and gave him credit for time served from the date of his arrest. Following the conclusion of these proceedings, the trial court returned to the matter of the defendant's sentencing and stated:
On Emmanuel Lowe, I stated that he gets credit from the date of arrest; however, his time is to run consecutive to any other time that he is serving.[3] And since he was incarcerated, although he was arrested on that date, he still was incarcerated. And I believe his time doesn't start running until after that incarceration, because the Code states that it must run consecutive to any other time he is serving. So we will do that that way.
Thus, the trial court did not alter the execution of the defendant's sentence but, rather, sought to alter when his time for credit served was to begin running. While the trial court stated that it believed the defendant's credit for time served should not begin to run until after his incarceration for the pending (murder) charge, such a pronouncement was without effect. Credit for time served is automatic. Louisiana Code of Criminal Procedure article 880 provides that a defendant shall receive credit for time served prior to the imposition of sentence. The 1997 amendment to La. Code Crim. P. art. 880 is designed to make credit for prior custody self-operating even on a silent record. Thus, there is no need for the sentencing court to reference credit for time served. State v. Young, 34,534, p. 3 (La. App. 2 Cir. 5/9/01), 786 So.2d 228, 230. The defendant is entitled to credit for time spent in actual custody prior to imposition of the sentence for the crime for which he was convicted at trial. See State v. Jarvis, 98-0522, pp. 6-7 (La. App. 1 Cir. 12/28/98), 727 So.2d 605, 609.
While the trial court seemed to suggest that the defendant's time for credit served for the battery conviction was to begin running after his incarceration for the murder charge, the defendant had not gone to trial yet for the murder charge and, therefore, had not been convicted and sentenced. Accordingly, at the time of the defendant's sentencing for battery, there was no other sentence to which to run the battery sentence consecutive. As such, the defendant's credit for time served began running from the date of arrest for the battery charge.
In felony cases the defendant shall always be present when sentence is pronounced. La. Code Crim. P. art. 835. It is unclear from the record if defendant or his counsel was actually present when the trial court sought to alter when the time for credit served was to begin running. Neither is it clear when the trial court noted for the first time that defendant's sentence was to run consecutive to any other sentence.
Just prior to the trial court stating, "Go back to Emmanuel Lowe," and then discussing changing when the credit for time served should begin to run, the record states, "(At this time, unrelated matters were taken up.)" Following the trial court's imposition of sentence, the minutes state, "LATER: The Court noted that the previously imposed sentence must run consecutive. The Court ordered that the sentence just imposed, run consecutive to any other time being served." Thus, it is impossible to tell from the record how much time elapsed between the trial court's original imposition of sentence and its subsequent altering of the sentence. As such, the record does not clearly indicate whether or not the defendant or the attorneys were present when the trial court went, what appeared to be, back on the record and altered the defendant's sentence.
However, the defendant was arrested on October 28, 2006, for the battery of Deputy Owens, and according to a minute entry, he was relieved of his bond obligation on May 17, 2007, for the battery charge only, i.e., he remained in custody for the pending murder charge. He was convicted of the battery charge on December 5, 2007, and sentenced on February 15, 2008. Thus, since the defendant would have completed service of his one-year sentence for the battery conviction as of this present date, any issue regarding credit for time served would be moot. Moreover, any issue regarding his absence during the altering of his sentence, namely, making the sentence consecutive to any other sentence, would also be moot.
Accordingly, these assignments of error are without merit.

DECREE
For the foregoing reasons, we affirm the conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] In State v. Freeman, 427 So.2d 1161, 1162-63 (La. 1983), the Louisiana Supreme Court, without resolving the issue, suggested that the defendant in a non-homicide case may have the burden of proving self-defense by a preponderance of the evidence. See State v. Barnes, 590 So.2d 1298, 1300-01 (La, App. 1 Cir 1991).
[2] The defendant was being detained on a first degree murder charge.
[3] With regard to the battery sentence being consecutive to any other sentence, the trial court was correct. "Such sentence shall be consecutive to any other sentence imposed for violation of the provisions of any state criminal law." See La. R.S. 14:34.5(13)(2).